Teresa Collazo de Texidor, Petitioner and Appellant, *v.*
People of Puerto Rico, Respondent and Appellee.

No. 5832.  Argued December 7, 1933.—Decided February 7, 1934.
Rehearing denied March 26, 1934.

160

*R. H. Blondet* for appellant. *Benjamin J. Horton, Attorney General,* and *Harry B. Llenza* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the court.

Teresa Collazo, widow of Luis Texidor Ortiz, brought a proceeding to establish in favor of her late husband the dominion title to a parcel of land in the ward of Carite, Municipality of Guayama, bounded on the north by Carlos H. Blondet, on the south by Rafael Larrauri, on the east by Juan Poventud, and on the west by Miguel Madera and José Rivera.

It was alleged that the parcel described was acquired by Luis Texidor Ortiz, while married to the petitioner, as appears from a public deed executed in San Juan, on May 27, 1921, by purchase from Luis Texidor 2d and his wife Josefina Costoso, who acquired the property by purchase from María Magdalena Cintrón; that the said María Magdalena Cintrón acquired it by purchase from Tomás de la Cruz Rivera, who acquired it by inheritance from his father Santos de la Cruz; that the latter acquired it by purchase from his legitimate children by his first wife, Tomás, Inés, and

María Segunda de la Cruz Rivera, and from Nicolás León Rivera, the latter as heir of his daughter Jacinta León de la Cruz. The petition adds that the petitioner as well as her predecessors in title have been in quiet and open possession of the property, as owners thereof, without interruption, for over 30 years, as to persons present. All these conveyances of title were made by means of public deeds executed before a notary.

The petitioner finally alleged that, since there is no recordable title to the said property, she has filed her petition to record the dominion title in the name of Luis Texidor Ortiz, and prays that, after the proper proceedings are had, the court enter a final order holding that the dominion title of Luis Texidor Ortiz to the said parcel has been established, and providing that the title be recorded in the Registry of Property of Guayama in the name of the said Luis Texidor Ortiz.

The People of Puerto Rico filed an opposition to the petition of Mrs. Texidor, alleging that it is the owner of a parcel of land located in ward Carite, Municipality of Guayama, having an area of 250 acres (cuerdas), and that the property described in the petition forms part of the 250 acres belonging to the People of Puerto Rico and recorded in its name in the Registry of Property of Guayama.

The petition was filed on May 15, 1925. The District Court of Guayama, rendered judgment denying the petition, and sustaining the opposition to the said petition, on April 29, 1927. The petitioner appealed, and on June 21, 1930, the parties appeared before this court and both requested that the case be reopened in the District Court of Guayama, and in the event that the reopening of the case was ordered as requested, that the appeal of the petitioner be dismissed. The case was reopened in the District Court of Guayama, and after the hearing of the same, at which evidence was produced by both parties, the court denied the

petition, and the petitioner took this appeal from the judgment of the lower court.

The dominion title alleged by the petitioner in behalf of her deceased husband springs from a public deed executed on May 7, 1859, wherein Pablo José Aponte conveys to Leocadia Rivera his "right of property, dominion, and seigniory" in a parcel of land of 50 acres bounded by Francisca Colón, Cruz Aponte, and the river. This document, considered together with certain other complementary documents, was recorded in the Registry of Property of Guayama in September 1929, with the curable defects that the boundaries of the parcel were not described in relation to the points of the compass, and that the age and residence of Leocadia Rivera were not stated.

The said Leocadia Rivera died on January 16, 1875. On February 17 of the same year her husband, José de los Santos Cruz y Rodríguez, in a public deed describing certain properties, executed before Notary José Mariano Capó y Alvarez, stated that his said wife left "as children of the marriage with deponent, the said Tomás, Pablo, Inés, Eustaquia, Vicente, and Segunda, and she also left a child, named Vicente, born to her prior to her marriage with said deponent (compareciente)." This deed of description of properties shows that Leocadia Rivera contributed a parcel of 50 acres of land to her marriage with Santos Cruz Rodríguez.

Inés Cruz Rivera, Tomás Cruz Rivera and María Segunda Cruz Rivera, children of Leocadia Rivera and José de los Santos Cruz Rodríguez, sold to the latter their share in the estate of their mother, which included the parcel of land of 50 acres, valued at $250. The two heirs first named appear on September 6, 1894, before notary José Mariano Capó, to give José de los Santos Cruz a receipt for their share of the inheritance, and the last named heir makes an identical statement in a public deed executed before the same notary on February 20, 1897. A deed was also executed covering a

receipt in favor of José de los Santos Cruz for the share of Eustaquia Cruz Rivera in the inheritance.

As may be seen, the heirs of Leocadia Rivera, with the exception of Pablo and Vicente, appear to have transferred to their father, José de los Santos Cruz Rodríguez, their share in the estate they inherited from their mother. Before her marriage, Leocadia Rivera had a son named Vicente, who seems to have been the same one that was mentioned in the deed of description of properties executed by José de los Santos Cruz y Rodríguez. It is not clearly expressed whether, besides this son born before her marriage, Leoca-- dia Rivera had another son bearing the same name, during wedlock with José de los Santos Cruz Rodríguez. We are inclined to believe that there was only one son named Vicente.

José de los Santos Cruz Rodríguez, in his will executed on November 4, 1913, stated that in his first marriage with Leocadia Rivera he had several children who had died without issue, and that there remained surviving those named Tomás, Pablo, Inés and María Segunda. On August 8, 1917, Tomás Cruz Rivera, son of José de los Santos Cruz Rodríguez, sold to María Ortiz a rustic parcel located in ward Carite, with an area of 50 acres, bounded on the north by Carlos Blondet, on the south by Rafael Larrauri, on the east by Juan Poventud, and on the west by Miguel Madera and José Rivera. The vendor stated that this parcel was acquired by him in part payment of his share in his father's estate, as appears from the partition of the estate of the deceased José de los Santos Cruz, which partition was approved by the District Court of Guayama on November 24, 1916. This parcel, in the opinion of the petitioner, is the same one that was owned by Leocadia Rivera, and which was purchased by petitioner's husband Luis Texidor Ortiz. This is the first time that the said parcel appears described according to the points of the compass, and the description coincides with that of the parcel described in the petition in this case, but it

must be noted that a river mentioned as a boundary of the old parcel is not mentioned in this latest description.

The evidence clearly shows that José de los Santos Cruz Rodríguez purchased the shares of his children Inés, Tomás, María Segunda, and Eustaquia Cruz Rivera in the estate of Leocadia Rivera, which included a parcel of 50 acres of land, located in ward Carite Arriba, bounded by Francisca Colón, Cruz Aponte, and the river. In 1861 Leocadia Rivera paid the town of Cayey a tax of 38 cents on 50 acres of land in ward Carite Arriba. There are two heirs who do not appear to have conveyed their share in the inheritance to anyone, Pablo, son of Leocadia Rivera and José de los Santos Cruz, and Vicente Aponte Rivera, natural child of Pablo José Aponte and Leocadia Rivera, born before the latter's marriage to José de los Santos Cruz Rodríguez. This last-named heir, who, according to the deed embodying the receipt granted by Tomás and Inés Cruz Rivera in 1894, died after his mother, could not have transferred his share of the inheritance to José de los Santos Cruz Rivera, who was not his father and since it was not proved that Vicente and Pablo parted with their shares in the estate of Doña Leocadia, it can not be said that dominion title to the entire parcel has been established in favor of Luis Texidor Ortiz. In the will of José de los Santos Cruz Rodríguez, executed on November 4, 1913, Pablo Cruz Rivera appears among the then living children of the testator. There is no evidence in the record as to the disposition made of the share in the inheritance of this son and heir of Leocadia Rivera. As to Vicente Aponte Rivera and Pablo Cruz Rivera, it can not be alleged successfully that their rights in the property formerly owned by Doña Leocadia have prescribed, because, as may be deduced from the documentary evidence, which is the only evidence submitted to this court, José de los Santos Cruz Rodríguez always acknowledged the shares of his children in the estate of his wife, and it can not be said that he was in

possession, as owner, of the shares which were not conveyed to him.

Now, when these dominion proceedings were brought in 1925, the title acquired by Leocadia Rivera in 1859 had not been recorded in the registry of property. The petitioner had this title recorded in 1929. It might well have been alleged in 1924, when the proceedings were brought, that, due to the difficulty of reconstructing the various transfers of the property, the petitioner resorted to the supplemental method of dominion proceedings in order to facilitate the recording of the title. In the case of *Bermúdez* v. *Morales,* 42 P.R.R. 411, the doctrine established in the cases of *Wiscovich* v. *Registrar,* 30 P.R.R. 122, and *Canino* v. *Registrar,* 31 P.R.R. 413, is ratified, and it is added:

"Ordinarily, where an estate is recorded the supplemental remedy of the dominion title proceeding provided by the Mortgage Law is not resorted to, but in cases like the present one where the registration dates from 1880, and various transfers have since occurred which would be difficult to reconstruct for the purpose of recording them, there is justification in having recourse to such supplemental remedy. . . ."

In the instant case, four years after the dominion proceedings were brought, the title acquired by Leocadia Rivera in 1859 was recorded and it does not appear that any subsequent transfer has been recorded. However, at the new hearing of this case held in 1931, the petitioner offered in evidence the documents set out in this opinion which, as alleged, constitute a chain of titles showing the successive transfers of the property mentioned, beginning with the title of Doña Leocadia, up to the last purchaser, Carlos H. Blondet. If this chain of titles really exists, and the various transfers of the said property have been reconstructed as alleged, it seems natural that a recording of the same in the registry of property should have been attempted in the same manner that the original title was recorded. We do not see how a new record of the same parcel can be made without

regard to these transfers, unless the cancellation of the record of the title granted to Doña Leocadia in 1859 is ordered.

But assuming, for the purposes of the argument only, that we could hurdle these procedural obstacles, in order to say that Luis Texidor Ortiz, or any subsequent purchaser, is the owner of the rights and interest in the said parcel which belonged to the heirs of Doña Leocadia who sold their shares in her estate to José de los Santos Cruz Rodríguez, we would always have to face the difficulty that it has not been shown that the parcel which belonged to Doña Leocadia is the same parcel which is described in these dominion proceedings.

We wish to state that the transcript of the evidence which appears in the record consists only of the documentary evidence produced by the petitioner at the new and last hearing of this case before the lower court. The evidence introduced at the first hearing held before Judge Rafael López Antongiorgi, deceased, has not been brought up to this court. The title recorded in the registry in favor of Doña Leocadia simply states that the parcel is bounded by Francisco Colón, Cruz Aponte and the river, without mentioning the points of the compass. The parcel described in the petition appears to be bounded on the north by Carlos H. Blondet, on the south by Rafael Larrauri, on the east by Juan Poventud, and on the west by Miguel Madera and José Rivera. Aside from these differences in the boundaries, there is in the record no evidence, admitted by the lower court, to explain why the river which was formerly one of the boundaries of the parcel from which Luis Texidor Ortiz purports to derive his rights, does not appear as a boundary of the parcel described in the petition.

The petitioner offered in evidence an aclaratory deed, which was objected to by the opposer, and which was not admitted by the court. The petitioner took an exception, but has not raised the question in this court in her assignment of errors, nor is it mentioned anywhere in her brief. In this aclara-

tory deed executed before notary José J. Aponte on March 7, 1930, Tomás Cruz Rivera says that his father, José de los Santos Cruz Rodríguez, in a will executed in Guayama on August 16, 1915, by public deed No. 54 before notary Antonio Rodríguez, stated that the parcel of 50 acres owned by him had, at that time, the following boundaries: On the north, Carlos Blondet, on the south Rafael Larrauri, on the east Juan Poventud, and on the west Miguel Madera and José Rivera; and that it was formerly bounded on the north and east by Francisca Colón, on the south by Cruz Aponte, and on the west by the Plata River. This will, which according to Tomás Cruz Rivera was executed by his father on August 16, 1915, has not been introduced in evidence. The only will which appears in the record is that executed on November 4, 1913, by José de los Santos Cruz Rodríguez.

In the said deed, Tomás Cruz Rivera explains that "although in the more recent deeds where this parcel of 50 acres is described it appears to be bounded on the west by Miguel Madera and José Rivera, and in the first deed already recorded in the registry of property of the district, covering the conveyance made by Pablo José Aponte to Leocadia Rivera, mother of the declarant Tomás Cruz Rivera, the western boundary appears to be the Plata River, this is due to the fact that the said river separates the parcel of 50 acres from the properties of the said Miguel Madera and José Rivera." Inasmuch as this document was not admitted in evidence, we abstain from passing any judgment on the explanation offered by Tomás Cruz Rivera as to why the river does not appear as one of the boundaries of the said parcel. We wish to leave the petitioner entirely free to correct, in the manner provided by law, the curable defects noted by the registrar of property.

For these reasons, the judgment appealed from must be affirmed.

Mr. Justice Wolf agrees with the result.

ON MOTION FOR REHEARING

March 26, 1934

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

The petitioner moves that we reconsider our judgment, principally on the ground that we have not passed on the opposition filed by the People of Puerto Rico. There is no need to pass on it. The petitioner brought dominion proceedings, which the court may not decide in her favor, whether or not an opposition is filed, unless the essential allegations of the petition are established. The petitioner alleges that her husband, Luis Texidor Ortiz, derives his rights to the property with respect to which the dominion proceedings were brought, from a title which goes back to 1859, and which was recorded in the registry of property with the curable defect that the boundaries of the parcel are not stated in relation with the points of the compass. This title, indeed, refers to a parcel of 50 acres, bounded by Francisca Colón, Cruz Aponte, and the river. The petitioner has not proved that this parcel is the same as that described in the petition. The property described in the petition appears to be bounded on the north by Carlos Blondet, on the south by Rafael Larrauri, on the east by Juan Poventud, and on the west by Miguel Madera and José Rivera. No explanation is offered as to why the boundary of the old parcel, from which Mr. Texidor's rights are allegedly derived, with the river has disappeared.

Reference is made, in an aclaratory deed executed before a notary by Tomás Cruz Rivera, to a will made on August 16, 1915 by José de los Santos Cruz, wherein the boundaries of the parcel of 50 acres are described as they then existed, and which shows them to be the same as those set out in the petition.

We have no other information as to the existence of this document, which was not offered in evidence. The only will

which appears in the record is that made by José de los Santos Cruz on November 4, 1913, and this document does not mention the boundaries of the parcel. In the aclaratory deed, which was not admitted in evidence, Tomás Cruz Rivera states that the parcel recorded in the registry appears to be bounded on the west by the Plata River, and the registrar expressly noted the curable defect that the document presented to him did not show the boundaries of the parcel in relation to the points of the compass. It is not true that the parcel appears to be bounded on the west by the Plata River. We abstained from passing any judgment on the said aclaratory deed, inasmuch as it is not part of the evidence in the case, and in order to leave the petitioner entirely free to correct, in the manner provided by law, the curable defects noted by the registrar of property.

The documentary evidence offered by the petitioner in support of the title alleged to be in Luis Texidor Ortiz, refers exclusively to the old parcel which belonged to Doña Leocadia, and it has not been proved that this parcel is the same one which is described in the petition. It would be idle, therefore, to decide the question raised by the People of Puerto Rico in its opposition to the declaration of dominion title in Luis Texidor Ortiz to a parcel which has not been identified.

We have not considered any oral evidence in our opinion because, as we have said and now repeat, the transcript of the evidence appearing in the record consists only of the documentary evidence produced by the petitioner in the new and last hearing of this case before the lower court. The evidence introduced at the first hearing held before Judge Rafael López Antongiorgi, deceased, has not been brought up to this court.

The motion for reconsideration is denied.